1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   PETER T. HARRELL,                          No.  2:14-cv-01595 KJM GGH

12              Plaintiff,

13        v.                                     FINDINGS AND RECOMMENDATIONS

14   HORNBROOK COMMUNITY
     SERVICES DISTRICT, MICHELLE
15   HANSON, SHARREL BARNES,
     ROBERT WINSTON, JULIE BOWLES,
16   CLINT DINGMAN, ERNEST GOFF,
     ROGER GIFFORD, ROBERT PUCKETT,
17   SR., HORNBROOK COMMUNITY
     BIBLE CHURCH, STEVEN
18   CRITTENDEN, MURPHY PEARSON,
     BRADLEY & FEENEY, INC., BASIC
19   LABORATORY, INC., DUKE MARTIN,
     and KISHER, WINTON, & BOSTON
20   L.C.,

21              Defendants.

22

23                          INTRODUCTION AND SUMMARY

24        Plaintiff is a former disgruntled employee, to put it mildly.  Indeed, he was at one time the

25   acting manager of the Hornbrook Community Services District ("HCSD").  He initially brought

26   suit in part to claim his ultimate termination was caused by retaliation in violation of the First

27   Amendment.  Problematic as this claim might be on the merits, see Garcetti v. Ceballos, 547 U.S.

28   410 (2006), plaintiff has completely muddled this claim by adding myriad purported federal and

                                              1

1  state law claims in which he contests nearly every action or perceived inaction on the part of the

2  district and its officers--from its hiring practices, to its alleged violation of state open meeting

3  laws, to its functioning as a water company in violation of nearly every law in which it could be

4  in violation.  He sees conspiracies engaged in by almost everyone associated with the District

5  who plaintiff has deemed to have acted unwisely or criminally, and therefore has doubled the

6  number of defendants in his latest complaint.  His complaints, especially the Second Amended

7  Complaint at issue here (SAC), have been prolix, verbose, and uncontrolled.

8      Despite the explained pleading deficiencies in the First Amended Complaint ("FAC"), the

9  undersigned undertook to review the myriad of federal and state claims on their merits and issued

10  an Order that  ultimately dismissed the FAC with leave to amend, but also with copious advice

11  about the pleading deficiencies, *i.e.*, that "much less" was "more" in terms of pleading.  ECF 50.

12  Plaintiff not only did not take this advice, he complicated the pleading process with a 164 page

13  Second Amended Complaint to the point where it is not possible to adjudicate the claims.  It is

14  time to terminate this litigation.

15                    PROCEDURAL BACKGROUND

16      Plaintiff filed his original Complaint[1] acting in *pro se* on July 7, 2014, more than two

17  years ago.  ECF No. 1.  That Complaint was 24 pages long and pleaded two "Claims for Relief."

18  The First Claim for Relief included two "counts" purportedly grounded in federal law -- Freedom

19  of Speech and Due Process -- while the Second included eight counts purportedly grounded in

20  state law -- Slander, Willful Negligence/Negligence, False Light, Civil Conspiracy,

21  Intentional/Negligent Infliction of Emotional Distress, Labor Code Violations, Nuisance, and

22  Punitive Damages.  Altogether the submission amounted to 57 pages of material (27 page

23  Complaint and 30 page attachment).  Plaintiff was granted *in forma pauperis* status by order of

24  this court on August 6, 2014.  ECF No. 3.  Plaintiff's Motion to Amend, filed on August 21,

25

26

[1]  This Complaint and all other pleadings filed by plaintiff are prepared in 1-1/2 line spacing

27  rather double spacing required under Eastern District of California Local Rule 130.  Thus each of
the documents plaintiff filed would have been significantly longer, in terms of pages submitted,

28  than the documents actually filed, had plaintiff adhered to the Rule.

1  2014, was denied by the court without prejudice to its refiling accompanied by a proposed

2  amended complaint.  ECF No. 6.

3       On October 9, 2014, the court issued an order to show cause ("OSC") why the matter

4  should not be dismissed for failure to submit service documents to the U.S. Marshal, ECF No. 8,

5  and plaintiff responded to that order, ECF No. 9, and simultaneously filed a Motion to Amend,

6  id., and a copy of a proposed First Amended Complaint totaling 93 pages, comprised of a 38 page

7  Complaint and 55 pages of HCSD board minutes and related documents.  He added additional

8  state claims to those in his original complaint for:  (1) Violation of the HCSD bylaws; (2)

9  California Government Code violations; (3) Employment Discrimination; (4) Unfair Business

10  Practices; and (5) Violation of the Covenant of Good Faith and Fair Dealing.  Some of these

11  claims actually plead several counts.

12       On October 30, 2014, plaintiff formally filed the First Amended Complaint which also

13  added defendants Bowles, Dingman and Goff, officials of HCSD, to the defendant list.  ECF No.

14  10.

15       On December 5, 2014, the court issued an Order discharging the OSC issued on October

16  9, 2014, and denying the Motion to Amend as unnecessary.  ECF No. 11.  That Order also listed

17  the defendants upon whom service was appropriate and directed the Clerk to issue process and the

18  U.S. Marshal to serve that process within 90 days of the Order.

19       On February 23, 2015 defendant Robert Winston filed a Motion to Dismiss the Complaint

20  and to Strike specific state law claims, and a hearing was set for April 16, 2014 on that Motion.

21  ECF No. 14.  On March 25, 2015 plaintiff filed "Objections" to the Winston motion requesting it

22  be stricken by the Court or, in the alternative, that he be given 45 days in which to file his

23  Opposition.  ECF No. 18.

24       On April 1, 2015 the court granted plaintiff an additional thirty (30) days to oppose the

25  motions to Dismiss and to Strike, rejected his objections which he was directed to address in an

26  Opposition to the Motion, and vacated the calendar indicating that the motion, when fully briefed,

27  would be taken under submission and a new hearing would be set if the court determined it

28  necessary.  ECF No. 20.

1    On April 28, 2015, plaintiff filed an Opposition Memorandum.  ECF No. 29.

2    On May 22, 2015, defendants filed a new Motion to Dismiss and to Strike the FAC to be

3    heard on August 6, 2015.  ECF No. 35.

4    On June 7, 2015, plaintiff filed a request for permission to initiate written discovery to

5    "aid" him in preparing a response to the pending motions, ECF No. 38, which request was

6    opposed by defendant Winston.  ECF No. 38.  Defendant HCSD and individual defendants

7    associated with it, joined in the Winston Motion on June 12, 2015.  ECF No. 40.

8    On July 13, 2015 plaintiff moved for a 30 day extension of time to oppose the pending

9    Motion, ECF No. 42, and that motion was granted by an Order issued July 22, 2015.  This Order

10   also vacated the hearing calendar and indicated that the motion would be taken under submission

11   without oral argument upon completion of briefing.  ECF No. 43.

12   On August 12, 2015, plaintiff filed his 45 page Opposition to the Motion together with an

13   eight (8) page, single-spaced page Declaration of Kimberly Olson, ECF No. 47,  and a six (6)

14   page, single-spaced Declaration of Roger J. Gifford which was accompanied by twelve (12) pages

15   of documents, ECF No. 46, in support of his Opposition.  Both of the declarants are non-

16   defendant HCSD Board members.

17   On September 10, 2015, the court issued a 24 page Findings and Recommendations and

18   Order, ECF No. 50, in which it recommended:  (1) denial of  defendants' Anti-Slapp motions

19   without prejudice to refiling in response to a further amended complaint; (2) dismissal of

20   plaintiff's complaint with leave to amend which included specific requirements regarding the

21   elements of Federal Rule of Civil Procedure 8, the need to plead satisfaction of the pre-filing

22   requirements of the California State Tort Claims Act, explained the requirement that federal

23   jurisdiction grounds must be pleaded, and directed that the specific actions of each defendant

24   must be included in any amendment; (3) denying plaintiff's request for early discovery as there

25   can be no valid explanation for how it would help him respond to the pending motions; and (4)

26   denying plaintiff's Motion for Leave to Amend as it failed to include a copy of the proposed

27   amendment as required in Eastern District of California Local Rule 137(c).  Finally the court

28   ////

4

flatly stated that "any amended complaint **shall not exceed twenty-five pages**."  (Emphasis in original).  ECF No. 50 at 21:3-4.

Also on September 10, 2015, both defendants and plaintiff filed Objections to the court's Findings and Recommendations.  ECF Nos. 51, 52, 53, 54.

On March 22, 2016 the district court signed an order adopting the Findings and Recommendations, adding to the findings of this court that plaintiff was not granted leave to add Jason J. Sommers and Robert W. Lucas as defendants in any amended complaint.  ECF No. 55.

On March 28, 2016 this court issued an order directing the plaintiff to file a Second Amended Complaint ("SAC") within 30 days of the date of the order with an instruction to comply with the Federal Rules of Civil Procedure in doing so.  ECF No. 56.

On April 22, 2016 plaintiff requested a 30 day extension of time to file the SAC, ECF No. 57, and on May 2, 2016 the court granted that extension directing that the SAC be filed within 30 days of the order.  ECF No. 58.

On May 31, 2016, plaintiff filed a *164 page* SAC, *which included 325 footnotes*, ECF No. 59, and was accompanied by a six (6) page Table of Contents.  This complaint is discussed in detail below.

On June 9, 2016 the court ordered the defendants to respond to the SAC 20 days from the date of the Order.

On June 29, 2016 Defendant Robert Winston filed a Motion to Dismiss, ECF 66, and a Motion to Strike, ECF 67, Motions to Dismiss were also filed by defendants HCSD, ECF No. 68, and Murphy Pearson, ECF No. 68, and Murphy Pearson also filed a Motion to Strike.  ECF No 69.  All of these Motions were calendared for hearing on August 4, 2016.

On July 12, 2016 plaintiff filed a 104 page Motion for Preliminary Injunction and a Request for Appointment of a Receiver, ECF No. 71, which he noticed for hearing on August 4, 2016 pursuant to a "Request for Expedited Handling," insofar as the Motion did not meet the 28 day notice requirement of Eastern District of California Local Rule No. 230(b).

////

////

5

On July 19, 2016 plaintiff filed a Motion to Stay all defensive motions until recently added defendants could appear and bring any related motions before the court for hearing with those already calendared.  ECF No. 75.

On July 21, 2016 all defendants filed Opposition Memoranda to plaintiff's motion together with several Declarations, ECF Nos. 77, 78, 79, 80, and HCSD and the individual defendants related to the District sought judicial notice of complaints filed by HCSD employees who had provided Declarations to plaintiff that were allegedly related to the instant matter.  ECF No. 81.

On July 22, 2016 defendant Dingman filed an opposition to plaintiff's Motion to Stay.  ECF No. 82.

Also on July 22, 2016, the court issued an order removing plaintiffs Motion for Preliminary Injunction and for Appointment of a Receiver from the August 5, 2016 calendar and directed that all further motions should be filed in accordance with the requirements of Local Rule 230.

On July 26, 2016 the court moved the hearing then scheduled for August 4, 2016 to September 22, 2016.  ECF No. 87.

On July 27, 2016 plaintiff filed a Request for Continuance of the August 4, 2016 hearing, in part because of the "large volume of responses" submitted by defendants.  ECF No. 88.

On August 1, 2016 the court ordered the September 22, 2016 hearing to be vacated, directed no further filings would be accepted from any party unless in conformity to an emergency motion procedure set out in the order, and took all pending matters under submission for resolution.  ECF 96.

On August 2, 2016, apparently not yet having received the court's order, the plaintiff filed new motions for Preliminary Injunction and Appointment of Receiver to be heard on September 22, ECF No. 97 -- still not compliant with Local Rule 230(b)'s 28 day notice requirement -- along with several declarations and attachments. ECF Nos. 98, 99, 100.  Altogether these documents ran to 113 pages.

////

1   　　　　On August 15, 2016 plaintiff filed *another* Motion to Stay the hearing that had been set on

2   and removed from the September 22, 2016 calendar, ECF No. 102.  In so doing he ignored the

3   August 1, 2016 Order of the court vacating the September 22, 2016 calendar, taking all matters

4   pending on that calendar under submission, and ordering that absent a bona fide emergency no

5   further motions were to be filed and, even in the case of such an emergency, the party seeking to

6   file a motion would have to first obtain the permission of the court and specifying the showing

7   that would have to be made to qualify as a bona fide emergency.

8   　　　　　　　　　　　　　　　　　　DISCUSSION

9   　　　　Without regard to the legal arguments on the merits made by the various defendants in

10   their Memoranda in support of Motions to Dismiss, this court believes it must dismiss this

11   Complaint with prejudice pursuant to <u>McHenry v. Renne</u>, 84 F.3d 1172 (9th Cir. 1996).

12   A.　　　　THE SECOND AMENDED COMPLAINT

13   　　　　After two years plaintiff has yet to file a Complaint that complies with the Federal Rules

14   of Civil Procedure and with instructions provided to him in Orders from this Court.  Plaintiff was

15   given an Order that clearly explained the pleading requirements applicable to his claims, and

16   limited his amendments to 25 pages or less, ECF No. 50 at 21:3-4 and he was given an Order

17   from the District Judge directing that Robert Lucas, counsel for HCSD and related defendants,

18   *not* be named in any amended Complaint.  ECF No. 55 at 1:28-2:2.  Plaintiff completely ignored

19   both of these orders.  His complaints grew from 27 pages with 30 pages of attachments, in the

20   original complaint, ECF No. 1, to 38 pages in the FAC with 55 pages of attachments, ECF No.

21   10, to 164 pages in the SAC, which was accompanied by a six (6) page Table of Contents.  This

22   course of conduct appears designed explicitly either to attempt to force a settlement satisfactory

23   to plaintiff by wearing the defendants down through repetitive briefing exercises and expenditures

24   of funds on attorneys' fees, or as mere personal indulgence.

25   　　　　In fact, what the plaintiff has filed is what is commonly referred to as "shotgun

26   pleadings."  These are pleadings that make it difficult, if not impossible, for defendants to prepare

27   meaningful responses to the claims brought against them.  <u>Mendiondo v. Centinela Hosp. Med.</u>

28   <u>Ctr.</u>, 521 F.3d 1097, 1104 (9th Cir. 2008).  The term also refers to pleadings that "incorporate

　　　　　　　　　　　　　　　　　　7

every antecedent allegation by reference into each subsequent claim for relief." Wagner v. First

Horizon Pharm. Corp., 464 F.3d 1273, 1279 (11th Cir. 2006); see also Sollberger v. Wachocia

Securities, LLC, 2010 WL 2674456 (C.D. Cal. June 30, 2010); Destfino v. Kennedy, 2009 WL

63566 (E.D.Cal. Jan. 8, 2009).  Plaintiff's Second Amended Complaint is redolent with both of

these ills which are easily illustrated by the following elements of that pleading:

      1.     Paragraphs 1-5 comprise factual allegations regarding jurisdiction and includes

footnotes 1-10..  ECF No. 66-2 at 4:17-7-11.

      2.     Paragraphs 6 through 140 plaintiff state "facts" regarding each of the defendants

individually, and includes footnotes numbered 12-154.  Id. at 7:13-68:4.

      3.     Paragraphs 141-157 are part of a section titled "Background, and Overview of

Allegations," and includes footnotes numbered 155-192.  Id. at 68:5-78:18.

      4.     The next few sections of the pleading, consisting of paragraphs 158-204, contain

factual allegations regarding illegal meetings held by the Board, civil conspiracy between the

defendants, specific complaints of dangerous conditions, violations, and "other wrongdoing"

asserted by plaintiff to the district Board that allegedly went unaddressed, duties ascribed to the

directors, contractors and employees of the District, status and agency of the defendants, and

"Live-Dispute Status; Request for Declaration of Rights," and includes footnotes numbered 156-

264. Id. at  78:19-105:15.

      5.     The next section, titled "Incorporation of Factual Allegations Into Counts,"

paragraph 205, explains to the reader how to incorporate applicable preceding allegations into

each specific Count through the use of a "key" that is explained there.  Id. at 1-5:16-106:5.

      6.     Finally, at page 106, paragraph 206 of the Second Amended Complaint, plaintiff

begins to lay out his Claims for Relief, each of them beginning with ""[p]laintiff realleges and

incorporates by reference *all of the paragraphs above*," (emphasis added),  thereby incorporating

205 paragraphs of text running 102 pages into each of 16 counts of individually stated federal

claims, id. at 106;6-128:25, and 34 counts of individually stated state claims.  Id. at 129:1-162:22.

     The sheer number and breadth of the state claims bespeaks the unmanageable nature of

the complaint:  (1) Freedom of Assembly; (2) Equal Protection; (3) Gifts of Public Funds; (4)

Liberty Interests; (5) Illegal Modification of Bylaws; (6) Unlawful Retaliation; (7) Violation of the Clean Water Act; (8) Violation of the Safe Drinking Water Act; (9) FIFRA Violations; (10) 42 U.S.C. § 1985; (11) Self-Dealing, Cal. Gov't Code §§ 1090, 87100; (12) Unlawful Termination; (13) Failure to Indemnify a Public Employee; (14) False Claims and Fraud; (15) Violation of Article 1, section 3 of the California Constitution; (16) Violation of Article 1, section 2 of the California Constitution; (16) Failure to Hire in Violation of Public Policy; (17) Violation of the Bane Act; and (18) California Public Records Act Violations.  Many of the claims contained several counts.  Plaintiff also added Robert Lucas as a defendant in the SAC despite the district court's express prohibition against so doing in its March 22, 2015 Order.  ECF No. 55.[2]

The SAC contains further claims sprinkled among the facts and footnotes, of which the following are exemplary, not exhaustive: footnote 4 purports to add a <u>Monell</u> claim; ghost writing in violation of law, SAC at 7; violation of due process and equal protection in failing to answer plaintiff's California Public Records Act requests, failure to allow inspection of public records, drafting false answers in litigation, defamation, SAC at 8; violation of First Amendment rights by failing to allow plaintiff to speak at public meetings; SAC at 9; submission of false claims, SAC at 9; work on HCSD facilities in violation of a myriad number of California statutes, SAC at 10; gift of public funds, footnote 26; interference with plaintiff's numerous other litigations, SAC at 11, violated the "Brown Act and other California statutes" by falsifying a public document, SAC at 14, interference with plaintiff's right to travel freely when a number of defendants "all conspired to repeatedly 'report' Plaintiff to various law enforcement agencies for 'having Oregon plates'…, SAC at 15; this [denying plaintiff and others access to public records] is also a due process violation, SAC at footnote 182; "Puckett has also…maintained public, private and *per se* nuisances" including, but not limited to, improper septic system, storage of hazardous materials on private property, storm water violations, maintaining a fire hazard because of poor electrical practices, SAC at 18-19 --- and on and on throughout the entire factual recitation.

---

[2]  In addition, plaintiff added Murphy Pearson Bradley Feeney, Inc., the law firm that employs attorney Lucas as a defendant although the clear purpose of the district court's order discussed above was to insulate attorneys representing HCSD attorneys from such an action.

1    The SAC contains numerous legal briefings or legal conclusions, e.g., SAC at footnotes

2    162 (pleading requirements) and 183 (waste of public funds); briefing on the right to assemble

3    and petition for grievances, SAC at 65; briefing on an attorney's duty not to conspire with his

4    clients in their wrongdoing, SAC at 62.  Again, in the desire to have some brevity in these

5    Findings and Recommendations, these are only a few examples.

6        Moreover, plaintiff completely muddles the jurisdictional basis for bringing his claims:

7    compare his stressing that all state claims are based on this court's supplemental jurisdiction (28

8    U.S.C. section 1367), para. 1, SAC at 2, with "Regarding Plaintiff's pendant claims in his

9    individual capacity (as a citizen of the State of Oregon and a property owner, taxpayer citizen,

10   and water consumer within the boundaries of the HCSD [i.e., California], this action is also

11   brought in the name of all persons similarly situated to Plaintiff, and as Private Attorney General

12   where permitted by law, and as provided by the HCSD Bylaws at Sections….."  SAC at para 2.

13   This leads to the obvious ambiguity: are the numerous state claims to be decided pursuant to

14   supplemental jurisdiction, or as a matter of course under diversity jurisdiction?  If diversity, is

15   plaintiff a citizen of the State of Oregon, or California?

16       Plaintiff's purported reliance on a private attorney general theory completely ignores his

17   need to demonstrate jurisdictional standing in federal court to so act.  Plaintiff attempts to allege

18   standing to represent all landowners and water users within the District as a "private attorney

19   general, a ploy that has been used before and rejected consistently.  See, e.g., Fiedler v. Clark,

20   714 F.2d 77, 79-80 (9th Cir. 1983);  Levy v. The Dial Corporation, 1997 WL 588925 at *2-*3

21   (N.D.Cal. Sept. 10, 1977); Environmental World Watch Inc. v. American Airlines, Inc., 2005 WL

22   1867728 at n.3 (N.D.Cal. Aug. 3, 2005).

23       In short, after two years of litigation, the SAC is an uncontrollable tangle of ambiguous

24   jurisdictional allegations, facts, legal theories, suppositions, speculations, all in support of a

25   myriad of federal and state claims against numerous defendants, some of whom are yet to be

26   identified by name, which are not susceptible to formulation of an answer, discovery, or

27   adjudication in any meaningful way.

28   ////

1    B.    FEDERAL RULE OF CIVIL PROCEDURE 41(b)

2          There are more than sufficient grounds to dismiss the Second Amended Complaint with

3    prejudice under Federal Rule of Civil Procedure 8, 41(b).

4          In McHenry v. Renne, 84 F.3d 1172 (9th Cir. 1996) the Circuit Court affirmed a dismissal

5    under Federal Rules 8, 12 and 41 after three efforts at drafting a Rule and Order compliant

6    complaint failed.  Id. at 1176.  In McHenry the issue was the massive inclusion of irrelevant

7    factual information in a complaint that was prolix and confusing.  The McHenry original

8    complaint was thirty-five pages long but was never served.  Instead it was replaced by an

9    Amended Complaint that was thirty-seven pages long and was "mostly an extended narrative of

10   the details of the various activities of plaintiff McHenry," and failed to distinguish between

11   defendants who played roles in each of his two claims for relief and including conspiracy

12   allegations involving numerous players in Mr. McHenry's drama.  Id. at 1174.  The trial court

13   dismissed this complaint with instructions regarding the content of any second amended

14   complaint.  Id. at 1175.  The second amended complaint "contained identically argumentative and

15   prolix allegations, and had now grown to fifty-three pages," and mixed "allegations of relevant

16   facts, irrelevant facts, political argument, and legal argument in a confusing way."  Id. at 1175.

17   The trial court gave the plaintiff one more chance to formulate a satisfactory complaint, this time

18   suggesting he would be  "well advised to edit or eliminate [the] twenty-six page introduction and

19   focus on linking . . . factual allegations to actual legal claims.  The purpose of the court system is

20   not, after all, to provide a forum for storytelling or political griping, but to resolve legal disputes."

21   Id. at 1176.  Instead of taking the court's advice, the third amended complaint "still read[] like a

22   magazine story instead of a traditional complaint," and the pleading now stretched to fifty-three

23   pages.  Id.  After referring the matter to a magistrate judge for analysis, the court dismissed the

24   complaint without leave to amend under Rule 41(b) for violation of a court order.  Id. at 1177.

25   In so holding the court noted the ills visited on both the court and litigants when faced with a

26   complaint that does not conform to the rules:

27          Prolix, confusing complaints such as the ones plaintiffs filed in this case impose
28          unfair burdens on litigants and judges. As a practical matter, the judge and opposing

11

counsel, in order to perform their responsibilities, cannot use a complaint such as the one plaintiffs filed, and must prepare outlines to determine who is being sued for what.  Defendants are then put at risk that their outline differs from the judge's, that plaintiffs will surprise them with something new at trial which they reasonably did not understand to be in the case at all, and that res judicata effects of settlement or judgment will be different from what they reasonably expected.  "[T]he rights of defendants to be free from costly and harassing litigation must be considered."  Von Poppenheim v. Portland Boxing & Wrestling Com., 442 F.2d 1047, 1054.

The Judge wastes half a day in chambers preparing the "short and plain statement" which Rule 8 obligated plaintiffs to submit. He then must manage the litigation without knowing what claims are made against whom. This leads to discovery disputes and lengthy trials, prejudicing litigants in other case who follow the rules, as well as defendants in the case in which the prolix pleading is filed.[3]  [T]he rights of litigants awaiting their turns to have other matters resolved must be considered…..

Id. at 1179-1180.

Many courts have followed the reasoning of McHenry to rid the system of complaints like the instant one.  In Polk v. Beard,  2014 WL 4765611 (C.D.Cal. June 20 2014),[4] the Central District of California was faced with a similar situation to the one here in that each time a new pleading was filed it exceeded the one before it, id. at *1-3, with little or no attention paid to orders of the court, id. at *4, and, after applying the Ferdik standards discussed below, dismissed the complaint with prejudice, noting that "judges are not like pigs hunting for truffles buried in briefs." Id. at *5, quoting U.S. v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991)(per curiam).  In Gottschalk v. City and County of San Francisco, 964 F.Supp.2d 1147 (N.D. Cal. 2013), the court dealt with a complaint that violated Rule 8 insofar as it consisted of incomprehensible rambling, id. at 1154, largely conclusionary allegations and generalized political grievances or conspiracies. Id. at 1155.  The undersigned recognizes that length per se may not warrant the dismissal of a complaint pursuant to McHenry, and the Ninth Circuit so held in Hearns v. San Bernardino Police

---

[3]  See headnote 8 to this case which reflects that 286 cases have cited this section of the opinion regarding the obligation of the court to consider the rights of litigants awaiting their turn to have their matters heard in a situation such as this.

[4]  This case has been appealed to the Ninth Circuit Court of Appeals, Cade No. 14-56884 filed December 3, 2014, and now awaits decision there.  It is nonetheless cited here as a shorthand way to refer to the trajectory of cases that have succeed McHenry.

1    Dept., 530 F.3d 1124, 1131 (9th Cir. 2008).  In Hearns, however, although the complaint was

2    excessively long, the claims were characterized as "intelligible" and "logically organized," albeit

3    with excessive factual detail.  Id. The SAC here is anything but intelligible or logically organized

4    due to the number (tens if not hundreds) of enumerated and unenumerated claims scattered about

5    a very lengthy pleading.  And the Ninth Circuit clarified the breadth of the holding in Hearns:

6    "[W]e  never held – and we know of no authority supporting the proposition—that a pleading

7    may be of unlimited length and opacity."  Carfasso, U.S. ex rel. v. General Dynamics C4

8    Systems, Inc., 637 F.3d 1047, 1058 (9th Cir. 2011) distinguishing Hearns.

9            In dismissing a Complaint for failure to obey a court order, or for gross pleading

10   deficiencies, which is what Rules 8 and 41 encompass, the Ninth Circuit has generally held that

11   "a district court should grant leave to amend even if no request to amend was made, unless it

12   determines that the pleading could not possibly be cured by the allegation of other facts.  Doe v.

13   U.S., 58 F.3d 494, 497 (9th Cir. 1995) quoting Cook, Perkiss & Liehe v. N. Cal. Collection

14   Service, 911 F.2d 242, 247 (9th Cir.1990).  However, the policy of freely allowing a motion to

15   amend is overcome by situations in which there has been undue delay, bad faith, prejudice, and

16   futility.  Harris v. Secretary of Housing and Urban Development, 2014 WL 6060171 *11

17   (E.D.Cal. Nov. 12, 2014).  See Cal. Architectural Bldg. Prod., Inc. v. Francisan Ceramics, Inc.,

18   818 F.2d 1466, 1472 (9th Cir. 1988).  In any event, the court does not have to allow futile

19   amendments.  In fact, the Ninth Circuit held in Klamath-Lake Pharmaceutical Ass'n v. Klamath

20   Med. Serv. Bureau, 701 F.2d 1276, 1293 (9th Cir. 1983) cert. denied 464 U.S. 822 (1983), that

21   "futile amendments should not be permitted."  (Emphasis added.)

22           Here, this court finds that allowing an amendment would be a futile act.  Plaintiff has

23   repeatedly failed to state a claim in the manner required by Federal Rule of Civil Procedure (8)(a)

24   despite guidance provided by the court, ignored the court's instructions regarding page

25   limitations, ECF No.50 at 21:3-4, and the naming of defendants.  ECF 55 at 1:28-2:2.  The

26   inability to cabin claims within any meaningful framework is not going to change after two years

27   of litigation.  District courts have particularly broad discretion to dismiss without leave to amend

28   based on futility where a plaintiff has amended once already, even without the kind of guidance

13

1   offered in this case.  See Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 1007 (9th Cir.

2   2009), *as amended* (Feb. 10, 2009).  Plaintiff's three abortive efforts to plead, each further from

3   the mark under Federal Rule of Civil Procedure 8, underscores that futility in this case.

4           Further, the circumstances discussed above meet the criteria that have been applied in the

5   Ninth Circuit in circumstances such as are found here in allowing dismissal with prejudice under

6   Rule 12(b)(6).  Ferdik v. Bonzelet, 963 F.2d 1258, 1260 (9th Cir. 1992), *cert. denied* 506 U.S.

7   915 (1992), addressed the considerations to be made before dismissing a case with prejudice as a

8   sanction for failure to follow court orders, which is one of the circumstances in the present case.

9   Id. at 1261.

10          1.       The Public's Interest in Expeditious Resolution of Litigation

11          This interest would not be compromised if the court exercised its inherent power to

12   dismiss this case that has been pending for over two years and, instead of moving toward

13   resolution, has regressed to the point where the present SAC contains no facts and no legal theory

14   and plaintiff has yet meaningfully to oppose multiple motions to dismiss.  Therefore, this element

15   is either neutral or supports the court's inclination to recommend the dismissal of the Second

16   Amended complaint with prejudice.

17          2.       The Court's Need to Manage its Docket¬

18          There has been a great deal of activity in this case as laid out above,[5] but none of it has

19   been successful in moving the case forward even to the where the matter is at issue after several

20   months.  Many other litigants compete for the court's attention in order to reach "the just, speedy

21   and inexpensive determination of every action and proceeding" as Federal Rule of Civil

22   Procedure 1 makes clear is the point of the rules.  Plaintiff's goal, on the other hand, seems

23   exactly the opposite of that purpose insofar as he has moved through a series of actions that

24   appear designed to make it ever more impossible to reach that goal.  This element favors the

25   court's inclination to recommend the dismissal of the SAC with prejudice.

26

27   ─────────────

28   [5]  There are, to date, 103 docket entries, seventeen (17) of which are court orders unsuccessfully
     attempting to gain control of the case and move it toward resolution.

14

3.      The Risk of Prejudice to the Defendants

There is no risk to defendants.  They have briefed this matter several times only to discover that their efforts result in nothing but another expenditure of resources.  This element favors the court's inclination to recommend the dismissal of the SAC with prejudice.  Defendants have filed SLAPP motions which could, if addressed, provide some return on attorney fees expended to date, but compared to the cost of yet another round of motions and briefing, this can hardly be viewed as sufficiently prejudicial; maintaining the case on its present trajectory would be far more prejudicial.  This element favors dismissal without leave to amend.

4.      The Public Policy of Disposition of Cases on Their Merits

This element runs against the court's intended course but, standing alone, is insufficient to overcome the benefits to the action proposed.

5.      The Availability of Less Drastic Alternatives

The only real alternative to the course chosen above is to dismiss the complaint without prejudice and allow plaintiff to amend one more time.  Given the history of this case, and the pleading choices of the plaintiff to date, it is clear that plaintiff's failure to amend his pleading in any substantive manner to advance the case beyond the mere complaint level but, rather, pleading in a manner guaranteed to invite additional delay and motion practice, with the attendant costs to the defendants and the court, favors the court's inclination to bring this matter to an end.  Thus granting plaintiff yet another opportunity to amend his pleading would be futile.  See Desoto v. Yellow Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992); Taylor v. Wells Fargo Bank, N.A., 2015 WL 925741 (E.D.Cal. Feb. 27, 2016).

In light of the foregoing, this court will recommend that the Second Amended Complaint be dismissed pursuant to Federal Rule of Civil Procedure 41(b) on the grounds that permitting yet another amendment would be futile.

CONCLUSION

This court has given plaintiff multiple opportunities to provide a complaint that conforms to the Rules, has provided him with guidance in how to accomplish that goal, has warned that failure to adhere to court orders may result in dismissal, and has been wholly ignored.  Whether

plaintiff's failure to act as directed was the result of a "conscious and deliberate decision," O'Brien v. Sinatra, 315 F.2d 637, 641 (9th Cir. 1983), or "merely the result of gross inadvertence, plaintiff has demonstrated an impervious unwillingness to follow the advice of the court," Von Poppenheim, *supra*, 442 F.2d at 1053, plaintiff cannot be allowed to continue to claim the resources of the court and the parties when it has become apparent that any further effort to preserve the claims of this plaintiff are futile and debilitating.

In light of the foregoing IT IS HEREBY RECOMMENDED THAT:

1.      The Second Amended Complaint be dismissed with prejudice;

2.      Judgement be entered against Plaintiff.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir.1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated:  September 19, 2016

/s/ Gregory G. Hollows

UNITED STATES MAGISTRATE JUDGE